Traxler, are you still with us? I'm still here. Our third and final case is 22-4343, United States v. Forrest. Mr. Jankowski. Good morning, Your Honor. May it please the Court, I'm Vincent Jankowski. I represent Appellant Kevin Forrest. Today we're asking this Court to reverse the decision of the District Court denying Mr. Forrest's motion to withdraw his guilty plea. I think we all agree that of the six factors to be considered in evaluating motions to withdraw guilty pleas, we all agree that the most important is whether the plea is knowing and voluntary. It's most important because it dovetails with due process. The Supreme Court has held that where a plea is not knowing and must be vacated. It is clear, undisputed, that Mr. Forrest did not know the elements of the offense at the time he pled guilty. He was not told that it was an element of the section 922G offense to which he pled guilty. There was an element that at the time he allegedly possessed the firearm that he had to be aware that he was a member of the class of persons prohibited from carrying that case. It was not in the indictment, not in the plea agreement, it was not in the rule 11 colloquy, it was not in the pre-sentence report. He was totally ignorant of that element at the time he entered the plea. There is, I think for that reason alone, because the plea was not knowing involuntary, the other more factors don't even need to be considered and this Court can reverse the decision of the District Court on that basis alone. Going to the remaining, assuming the Court then does reach the remainder of the more factors, I think it's important to know what the timeline of this case is. Mr. Forrest pled guilty on May 22, 2018. He was sentenced July 13, 2018. By then, Rehaff, the case that he's principally relying on, had not yet been decided and that's significant in this case. So he's been sentenced, he is now under sentence, he has no attorney at this point. His attorney only represented him in the District Court. He can't file a motion to withdraw the guilty plea because he's under sentence. He's got rule 11E as a bar to his withdrawing the guilty plea. He's incarcerated but he wants to appeal. He makes an effort to file a notice of appeal and he sends it to the District Judge. It doesn't get to the clerk's office and for whatever reason it gets returned to him but by then he had been moved from the Chesapeake detention facility over to his Bureau of Prisons facility and Bureau of Prisons just does not forward mail. But he thinks he's got an appeal in this court and while he is there incarcerated thinking he's got an appeal, Rehaff has decided on June 21, 2019. Now he has an avenue for relief but he doesn't have an attorney to tell him that. Eventually he gets his original appeal docketed in this court and he's appointed an attorney on January 8, 2020. Now for the first time he has an avenue of relief, Rehaff, and he has an attorney to tell him that. But it actually gets better for Mr. Forrest because on March 25, 2020 this court decided Gary which essentially said that the Rehaff error are structural errors warranting per se vacated of guilty plea. So Mr. Forrest's opening brief in his initial appeal was filed less than two weeks after this court decided Gary on April 3, 2020. That brief sought relief under Rehaff and Gary. It cited the principles of Rehaff and this court's decision which made it structural error for Mr. Forrest not to be advised of the missing the status element that Rehaff said had to be admitted. So the government didn't like this court's panel decision in Gary and they sought further review both in this court and in the Supreme Court and they successfully asked this court to hold the case in abeyance. So this case was in abeyance from April 23, 2020 to August 9, 2021. So a lot of the delay that the government is for their own benefit in order to further litigate Gary. By the time the case came out of abeyance, this court had decided Rogers on June 2, 2020 and Singletary on January 12, 2021. Mr. Forrest promptly asked for a remand. Once Rogers and Singletary were decided, they had for the first time, Mr. Forrest had a congruence of grounds to reverse his appeal and he had an attorney to represent him and he had a mechanism for which to return the case to the district court where it should have been decided in the first place. So it was remanded to the district court and the court evaluating the factors found that... Can I ask about that? So there was no indication though in this request for a remand that your client intended also to litigate the Rehave issues before the district court. Is that right? There was nothing in the motion for remand. However, by remanding the case to the district court under Rogers, the court essentially is saying that initial sentence was a nullity. That's what Roger says. Right. But this is all about the guilty plea, not the sentence. Rehave has to deal with the guilty plea. Right. But that puts him in a pre-sentence posture, which enables him... Pre-sentence but post-acceptance of the guilty plea, right? Right. That falls under Rule 11D and this court's... The mandate says the judgment of this court under 10.521 takes effect today. And the judgment of the court was that in accordance with the decision of this court, this case is remanded to the district court for further proceedings. So that leaves it open to the district court to conduct an initial review of Mr. Forrest's motion to withdraw his guilty plea. Not under the plain error standard, which is disfavored. Not under any other kind of... But what Mr. Forrest sought to do was what he should have done. The favored way of litigating cases is the district court takes the first view and this court does the review. And that's what Mr. Forrest attempted to do. He wanted to withdraw his guilty plea. And from the beginning, from the time he filed his first initial appeal, he wanted to withdraw that guilty plea. I'm sorry to interrupt you, but let's say Rogers and Singletary had never been decided. And you've got the posture that you just described, case upon appeal. Rahab is decided and he's litigating Rahab before us. Is there any basis for a remand at that point? I don't think there would have been a basis for remand. Why does he get the benefit of litigating Rahab? Simply because two unrelated issues were the subject of the remand. It would seem the mandate rule would prohibit that. Otherwise, it seems like an unwarranted benefit to your client. Well, he would have had to do a 2255. He would have had to do collateral relief, which is then again, disfavored. He could, even today, he could file a 2255, but then the government could come back and say, well, he could have raised it in the district court because he could have raised it on remand. So he forfeited his 2255 argument. It's sort of a catch-22 situation. And the 2255, I mean, that's a disfavored method of procedure too. Direct appeal, raising the issues in the district court in the first instance, is the preferred way of litigating cases. And that's all Mr. Farris did. Mr. Farris could file a 2255, but then this court would have to, if it was denied, this court would then have to review it under the lens of 2255. Sorry to interrupt again, but so Rayhafe obviously was the case that first raised, Mr. Rayhafe was the first one apparently to raise the issue, but it could have been Farris instead of Rayhafe, right? He could have raised that issue the first time around when he pled guilty. He didn't. Comes up on appeal. Rayhafe has decided he now gets the benefit of that case on appeal, which is a plain error standard, not that great for a criminal defendant. So again, I'm just trying to figure out why he should get the benefit of full plenary review in the district court on an issue that in every other circumstance would have been decided on plain error. Because a plain error review is, it's sort of like a slender reed that's thrown from the court. The court is saying, okay, look, you forfeited this error. You could have raised it in the But we're going to let you review it, but here's the hurdles you have to appear. So if Rayhafe had been decided before Mr. Farris had been sentenced the first time, then he would have had benefit of Rayhafe. It's not, and you're right, he could have raised it, but it certainly wouldn't have been successful. Nobody saw Rayhafe coming. The only people who saw Rayhafe coming, I would respectfully swear the seven justices who decided the Rayhafe case. Or Mr. Rayhafe, apparently. Well, maybe he had a smart lawyer, or maybe eight people, because nobody else saw this coming. I mean, there was certainly nobody in the district court did. The prosecution didn't, the district court didn't, his trial attorney didn't. Nobody anticipated this decision in Rayhafe. Section 922 had been around a long time. Nobody had raised that issue. And it wasn't in the indictment. Nobody saw this issue coming. And he did not have the, he didn't have precedent. He filed a motion to withdraw his guilty plea under, using a Rehafe argument. The first thing the district court says was your authority. Yeah, he didn't have any. So all Mr., and the precedents were changing very rapidly in Mr. Forrest's situation. The precedents were changing. He starts trying to catch up with his precedents. Whether or not he is entitled to plenary review should not depend on the fortuity of when the Supreme Court decides Rayhafe in relation to when he does his guilty plea. I think he's entitled to a full review of his position. And the fact that Rogers and Singletary just provided that mechanism to do that did not preclude him from raising this. Otherwise, as I say, he could, till to this day, he could file a 2255. But this court would then of the decision that he should have had, because when the Supreme Court decided Rehafe, when they decided, they didn't say from now on, this is an element of the offense. The Supreme Court is saying, since the statute was enacted, this was an element of the offense. So when when he did his plea, that was an element of the offense. And it was wrong. Everybody had wrong. And he should not be penalized for that. All he wants to do is to take full advantage of the law in a manner which this court approves of. And that's all he did. He shouldn't be barred from doing that. I'm sorry to interrupt you earlier. You read from the mandate, but it's really not just about the letter of the mandate, but also about the spirit of it. And it seems to me that what you're asking for is outside the spirit of this mandate that was based on Singletary and Rogers. So how is what you're asking for within the spirit of the mandate? I would think that once the court remands the case to the district court, the district court can do anything. Let me back up. I think there's two different kinds of remands. One is the kind of remand where this court remands for factual findings, and the case is then returned to this court. After the district court makes factual findings, the same appeal gets returned to this court, and this court then decides based on the supplemented factual findings to the district court. This case was different, though. This was a full remand, all right? So that went once the he had to file a new notice of appeal. Otherwise, it wasn't an automatic return to this court. And I think that makes a difference because that enables the district court to do whatever the district court can lawfully do. How is it that you are defining full remand when you say that? This court divests itself of jurisdiction and sends itself to the district court, and the district court has full jurisdiction to do whatever the district court can lawfully do. A remand for factual findings. The court says, well, you know, the district court didn't make factual findings, and we need the factual findings to decide this case. So we're going to send it back to the district court for factual findings. District court makes factual findings, and then returns the case automatically to this court without filing a new notice of appeal. I think that's Mr. Jankowski. Mr. Jankowski, let me ask you a question. This is Judge Traxler. If the district court can do whatever it is it wants to do, why do we tell them what to do? Well, I think this court wanted, when the court remanded, the court wanted a resentencing, all right? I don't think it precluded any other thing that the district court could lawfully do. For example, if in the interim the Supreme Court declared the statute unconstitutional, I think the district court would have been in its authority to vacate the conviction. It wouldn't have to say, well, you know, it does violate the remand order if I do that, so I'm not going to do it. Then they have to have another appeal, and then this court would then do it. It seems to me that is not judicial efficiency. It's not judicial economy. If the district court can lawfully do it, then I think the district court is allowed to do it, particularly, like I say, when it is a full remand, not just a remand for factual findings. Just moving on slightly, again, on the delay element, there was no delay. Mr. Forrest immediately sought the relief he sought. Most of the delay is due to the government. There was really no prejudice to the government. There was no trial date set. It's a simple gun case. With the exception of the interstate commerce element of the offense, this case is just like any other gun case that could be tried, and it's tried every day in the state courts in a day. The only interstate commerce element can be a police officer gets on the stand and says, yes, this weapon is manufactured in state A. It was recovered in state B, and that's all it takes to establish that. There's no prejudice to anybody, either the court or to the government, in terms of getting this, in terms of the remaining factors, and in terms of the competent assistance of counsel, the government suggests the Strickland type standard, but that standard only applies when, well, that standard deals with the contemporary professional norms. The contemporary professional norms at the time Mr. Forrest made his guilty plea were wrong. All the attorneys, nobody knew that this was an element of the offense. So to phrase it in terms of contemporary professional norms is wrong. The bottom line is Mr. Forrest got incorrect legal advice, and it directly led to his plea. I see that I'm out of time there. No pressure I could observe by three minutes. Thank you very much. Mr. Mettinger. May it please the court, your honors, my name is Jason Mettinger. I'm here on behalf of the District Court. I'm here on behalf of the District Court. And the reason I'm here is that this court should affirm, and it should affirm because the District Court properly denied the motion to withdraw the guilty plea. And your honor, there's a couple ways that the court can affirm here. I'd like to start with the one that you were talking about, Judge Diaz, and that was with the mandate rule. Because we do respectfully submit that under the mandate rule, this court was very clear about why it was sending it back. If you look at appellate ECF 43, in appeal number 20-4007, the first appeal, it clearly says, quote, upon consideration of the unopposed motion for remand, the court grants the motion, and here's the important part, remands this case to the District Court for resentencing. This court, as Judge Traxler indicated, this court was telling the District Court what it was allowed to do. You're allowed to resentence, and that is it. And that didn't come from nowhere. It actually came from the relief that Mr. Forrest was asking for. He asked for resentencing. If you look at appellate 40, in that appeal, he only asked for resentencing. As you indicated, Judge Diaz, there was no reservation of rights that when I go down, I want to keep arguing this rehafe issue. There was no reservation of that. It was just talking about Rogers and Singletary. We're just going to clean that up, and I'm going to get a resentencing. Maybe, you know, I can argue for a little bit lower sentence. We see that a lot in the Rogers and Singletary situations, but we certainly don't see a motion to withdraw the guilty plea. It's not a everything is back on the board. So we vehemently disagree with the suggestion that the we are not. Does it matter that we actually didn't decide the rehafe claim, and so it's not quite as clear as would be otherwise? So it doesn't matter, and here's why, Your Honor. There was a rehafe claim actually made in the initial appeal, so that's what his opening brief is all about. And so when he then goes to remand, that is foregoing the ability to challenge that conviction. You know, we agreed to this motion to remand, and when we agreed with the relief that was sought, it was our understanding that he's going to cede that issue, and he saw the writing on the wall. You know, interestingly, this remand order came about a month after this court decided Caldwell. Caldwell comes out and sort of says, these rehafe claims really aren't going to have legs for let's just go back to the district court. We'll do a resentencing. And then, frankly, we were surprised. We were surprised when we got this motion to withdraw the guilty plea and start all over again. We thought we were just going back for a resentencing. So I think under the mandate rule, this court can affirm and should affirm. It, we do have some cases that support this kind of a mandate, not allowing a motion to withdraw when we get back down to the district court. We cited the Abney case, the Hearn case, and the Jackson case. All of those say if you have this kind of a remand for resentencing only, you don't get to go back and upset your whole plea. So I think that's, frankly, the easiest way for this court to affirm. We also think Rule 11E does support this finding as well. So that's sort of our first argument. But second, Your Honor, even if we get into the merits, even if we're under Rule 11D2 and we have to run through all of the more factors, we still prevail. And we still prevail because we have a very high standard here, a standard of discretion. And Your Honor, the district court certainly didn't abuse its discretion. It was well within its discretion in looking at all of these factors. The first one that we've talked about is whether the plea was knowing and voluntary. We have a record here which shows that Mr. Forrest did understand the nature of what he was pleading guilty to, and that's all that's required under Rule 11. He doesn't need to know the elements of the offense, including the fact that he was in that class of people that would have been prohibited to have a firearm? So I think that the best answer to your question, Your Honor, is actually that he does not. And if you look at this court's opinion in United States v. DeFusco, 949F2114, there the defendant actually made the exact same claim. He said, the district court didn't tell me about each and every one of the elements, therefore I can go back. And this court said, no, that's not what Rule 11 requires. Rule 11 requires you to know about the nature of the offense. And there is not a ritualistic incantation that the district court has to do. And what you have to do is you have to marry this with our Rule 11 jurisprudence, because we review, this court reviews, Rule 11 errors for harmless error. In other words, let's say a district court just omits one of the Rule 11 requirements, just skips right over it. What Mr. Forrest is saying is that's automatic, do not pass. Go, come back, and I get to withdraw my guilty plea. This court says, no, we review it for harmless error. And as long as you know the nature of this offense, that is a fine guilty plea, and that will stand under the more factors. Doesn't he need to be advised in some way about the elements, even if it's not from a recitation by the district court, say it's included in the statement of facts, that might be sufficient. But that's not the case that we have here, right? So it's not the case we have here. Again, no one knew that Raheif was coming. My colleague is And if you look at the cases that we've cited, and I've got a couple more here for you, out of the 11th Circuit, the 8th, and the 7th, they all say district court actually doesn't need to say all of the elements verbatim. It's just not required. But we can move on, because there certainly are five other more factors that we have to weigh here. And the big one, I think, for the district court was there was no credible claim of actual legal innocence. And this is Joint Appendix page 191 to 93. And here, the district court said, quote, clearly no, in terms of has Mr. Forrest averred that somehow he didn't know about his status as a person that was subject to these laws. The district actually said it would border on frivolous for Mr. Forrest to come in here and say, I didn't know that I was a convicted felon. And the reason for that is he has 16 convictions. And all of those convictions, he did actually receive a sentence that was in excess. But it's not, sorry not to cut you off, but it's not about knowing that he was a convicted felon, right? It's about knowing that he was a prohibited person at the time he possessed the firearm or ammunition. It's not just that he knows he's a prohibited person, correct? Well, actually, and I hope I'm hearing you right, Your Honor, but I think it's a little different. He has to know about his status. In other words, do you know that you were subject to something that was punishable by more than a year? When he possessed the weapon. Correct. That's what I'm that's what I'm focusing on is the timing piece. It seemed like what I heard you saying was that he knows he has to know he's a felon essentially. But it really is about the timing of when he knows that, correct? So that's correct. So we go back to 2017. That's the day that this search warrant is executed. Police officers go in, they find three guns, they find 200 rounds of ammunition, they find a bulletproof vest, they find $15,000 in cash, and they have this hit letter that basically is telling Mr. Forrest to go to crazy, which is those facts. And the question is, in 2017, does Mr. Forrest know that he has previously been convicted of a crime punishable by more than a year? And as the district court found the answer is absolutely yes. It would be frivolous for Mr. Forrest to say no, because he had one instance where he served three years in prison. And then he had a roughly five year stint from 2000 to 2006. So this is time in prison. That was more than a year that Mr. Forrest actually spent behind bars. There is no possible way under Caldwell and under Hobbs that Mr. Forrest could say, you know, I didn't think that I was punishable by more than a year because he certainly was. I thought the district court found that the plea wasn't knowing involuntary as to the status element. So the district court did find that. The district court found that it was knowing involuntary as to basically everything except for that one element. You know, we respectfully disagree with that finding in the sense that we think it was knowing involuntary. But again, that's not dispositive here. We have all these other more factors that we have to get through, and they all point very heavily in favor of upholding this guilty plea. We also can talk about delay. I do respectfully disagree with my colleague here in terms of how he goes about the timing. I'm not aware of any case that says the timing to withdraw your guilty plea only starts running once you have counsel and all these other things. Even if we just look when Rahaf was decided, you know, Rahaf was decided in June of 2019. This notice of appeal ultimately doesn't get filed here until December 9th of 2019. I know there was a little question as to whether he tried to file the appeal or not. We're not here to argue that. But here's the key date that I'll try to impress upon the court. October 5th, 2021. That's the date that this remand order, Appellate ECF 43, gets issued. So that's October of 21. The motion to withdraw the guilty plea is filed February 2nd, 2022. So that's about five months. So, you know, the mandate issued, I think, October 27th of 2021. So we're back in the district court October 27th, 2021, and we wait until February 2nd, 2022, to actually file this motion to withdraw. That's actually a pretty significant delay. And there certainly had been a lot of water under the bridge since then. So I think that factor certainly cuts against Mr. Forrest. The fourth factor we have is that he did have competent counsel. I know my colleague talked about how the prevailing norms were erroneous. I disagree with that. This factor does cut against Mr. Forrest as well. As this court found in United States v. Morris, we're not going to say that a lawyer is acting ineffectively if they fail to anticipate a future change in the law. And that's 917 F3 818. There was no ineffective assistance of counsel here. Actually, Mr. Polanski, who was the counsel here, did Mr. Forrest a great service. He got him to plead out to a 922 G charge, which had a much lower statutory maximum compared to vicar murder or conspiracy to murder a federal witness, which is what he was going to be facing if he didn't enter into this plea agreement. So the service that Mr. Polanski offered was actually quite impressive. Number five, the withdrawal of the guilty plea would cause prejudice to the government. The district court made a factual finding to that effect. This is JA 194. With regard to the last factor, the court did say that it would waste judicial resources. That's also at JA 194. So if you look at all of these factors, all of the more factors, we think all of them weigh so heavily in favor of the denial of this motion. The district court got this one right. But again, I think the court doesn't need to get there because of the mandate rule. And that would be the government's argument. So unless the court or Judge Traxler have any questions, I'd respectfully cede the rest of my time. Thank you. Thank you, counsel. Thank you, Mr. Jankowski. Yes, just a couple of points to make. The mandate rule only applies to decisions that are actually made by the court or rulings that could have been made by the court. Certainly this court did not decide the rehab issue the first time it was on appeal. The court could not have decided the issue that is before the court because there was no motion to withdraw the guilty plea filed in the district court. So not only didn't the court decide the case, it could not have decided the issue that is before the court. Therefore, it is not precluded by the mandate rule. The government's argument on Rule 11E is a bit incongruous. They're saying that, the government is saying that on the one hand, Mr. Farris should have moved to withdraw his guilty plea once rehab was decided. But he can't do it now because of Rule 11E. Well, because he had already been in a post-sentencing posture. Well, he was in a post-sentencing posture when rehab was decided too. So the government could have made the same argument. So the Rule 11E argument doesn't fly. The question of whether or not an element is necessary for a defendant to know that an element is necessary for when he does a plea. The only time that courts have held that the recitation of the element is unnecessary is when the element is present from some other source. For that, in other words, if it's in the indictment, if it's in the plea agreement, if it's in the recitation of facts, if it's somewhere that advises the defendant, then it's not necessary that the Rule 11 hearing actually advise the defendant. That is, I believe Judge Walker pointed out, that's not the case here. And for that reason, all of the cases cited by the government in its initial brief and its Rule 28J letter are distinguishable. The one case that calls to mind is the Abney case, which is an unreported opinion. It's in the 28J letter. In the Abney case, it was a drug case. It was definitely not a rehab situation. And the court doesn't say what the issue was that was barred by the mandate rule, but presumably it was a drug case. It probably existed prior to the first appeal, and you don't raise it in the first appeal. When you can raise it in the first appeal, then the mandate rule does apply. And strike that, I misspoke. Let me move on. All right. In terms of the credible claims of actual innocence, the government, I think, speaks a little bit when it talks about his prior convictions. All of his prior convictions that were over one year were 25 years in the past. I think 1991 was the latest conviction that he had that he received more than one year. But there's more because the statute says that if the state characterizes it as a misdemeanor, the sentence has to exceed two years. And at the time that Mr. Morris received those sentences back in the 80s and 90s, he was sentenced at one time for a bunch of different offenses, and they were all ran together. And it could be hard for him to remember whether or not those convictions prohibited him from being in the status of a person prohibited from possessing the firearm. And that kind of falls right into Justice Sotomayor's the only delay the government is... Jankowski, you're a little bit over time. I'll let you wrap up quickly. Okay. Just a matter of just raising the Strickland issue, Your Honor. Again, the bottom line is the advice was wrong. It may have been what everybody was doing at the time, but the advice was wrong. And that's the bottom line when it turns to a valid guilty plea. Thank you, Your Honor. Thank you, Mr. Jankowski. I see that you two are court appointed. I want to thank you on behalf of the court for taking this appeal and ably arguing it today. Thank the government as well for its argument. We'll come down and re-counsel and then recess for the day. The Honorable Court stands adjourned until tomorrow morning. God save the United States and the Honorable Court.
judges: Albert Diaz, William B. Traxler Jr., Jamar Kentrell Walker